In re Bashir Y. ANASTAS, Debtor.

Bashir Y. ANASTAS, Appellant,

v.

AMERICAN SAVINGS BANK, Appellee.

No. 95–15167.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 9, 1996.

Decided Sept. 3, 1996.

1282

Bashir Y. Anastas, Fair Oaks, California, Appellant in Pro Per.

Barry W. Ferns, Alice Quinton, Ferns & Ferns, Concord, California, for Appellee.

Before: NORRIS and WIGGINS, Circuit Judges, and JONES,* District Judge.

JONES, District Judge:

Bankruptcy debtor Anastas appeals, in pro per, from a decision of the Bankruptcy Appellate Panel (BAP) affirming a judgment of the bankruptcy court for the Eastern District of California. The bankruptcy court ruled that Anastas' credit card debt was obtained through actual fraud and thus non-dischargeable in bankruptcy under 11 U.S.C. § 523(a)(2)(A). We have jurisdiction over this appeal from the BAP pursuant to 28 U.S.C. § 158(d). We reverse and remand.

---

* The Honorable Napoleon A. Jones, Jr., United States District Judge, Southern District of California, sitting by designation.

## I. BACKGROUND

Anastas held a VISA credit card from American Savings Bank, which he admittedly extended beyond its limit to make cash advances for gambling at Lake Tahoe casinos between February and July 1993. During the same time period, he extended several of his other credit cards to their credit limit, also to finance gambling activities. Although Anastas never failed to make the minimum monthly payments on his American Saving Bank credit card, Anastas testified that he suddenly found himself unable to make the minimum monthly payments on all of his credit cards and attempted to work out alternative payment schedules with his various creditors. According to Anastas, American Savings Bank was unwilling to work out an alternative payment arrangement, and Anastas felt that his only recourse was to file for bankruptcy protection under Chapter 7. He filed his petition on August 19, 1993. The unpaid charges on the American Savings Bank card total $6624.21 plus interest. Anastas admitted that he did not have sufficient income to cover the monthly payments on all of his credit cards. His monthly take home income was $3465.50, and his estimated monthly expenditures were $3535. His other liquid assets at the time he filed for bankruptcy were stocks and bonds worth only $800, which was not enough to service the massive credit card debt he had acquired, which totalled approximately $40,000.

American Savings Bank moved the bankruptcy court for an order that the credit card debt was non-dischargeable in bankruptcy because the extension of credit was obtained through actual fraud under 11 U.S.C. § 523(a)(2)(A) which states as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

After conducting a short bench trial at which Anastas testified, the bankruptcy court found that Anastas committed actual fraud within the meaning of section 523(a)(2)(A) because he incurred the credit card debt without the intent to repay. The court entered judgment in favor of American Savings Bank. On appeal, the BAP affirmed the bankruptcy court.

## II. STANDARD OF REVIEW

We review the decision of the BAP de novo. *Steelcase Inc. v. Johnston (In re Johnston)*, 21 F.3d 323, 326 (9th Cir.1994). Thus we review the bankruptcy court's decision under the same standard applied by the BAP. The bankruptcy court's findings are reviewed for clear error, and its conclusions of law are reviewed de novo. *Robertson v. Peters (In re Weisman)*, 5 F.3d 417, 419 (9th Cir.1993). Whether the correct legal standard was applied is a legal issue reviewed de novo. *Dewhirst v. Citibank (Arizona)(In re Contractors Equipment Supply Co.)*, 861 F.2d 241, 243 (9th Cir.1988). A finding of whether a requisite element of section a 523(a)(2)(A) claim is present is a factual determination reviewed for clear error. *See Runnion v. Pedrazzini (In re Pedrazzini)*, 644 F.2d 756, 757 (9th Cir.1981).

## III. ANALYSIS

### A. *APPLYING SECTION 523(a)(2)(A) TO CREDIT CARD DEBT*

In deciding whether Anastas' credit card debt was incurred through actual fraud, the bankruptcy court focused on the question of whether Anastas did not intend to repay his debt at the time he incurred it. Based largely on the fact that Anastas did not have the ability to service or pay back all of the debt that he incurred in his gambling activities, the bankruptcy court found that Anastas either lacked the intent to repay the debts at the time he incurred them, or at the least was grossly reckless in incurring such debt. The bankruptcy court held that this finding satisfied the actual fraud requirement of section 523(a)(2)(A). In conducting this analysis, the bankruptcy court relied on the extensive BAP case law applying section 523(a)(2)(A) in credit card cases. *See In re*

*Dougherty,* 84 B.R. 653 (9th Cir. BAP 1988); *In re Karelin,* 109 B.R. 943 (9th Cir. BAP 1990); *In re Eashai,* 167 B.R. 181 (9th Cir. BAP 1994); *In re Lee,* 186 B.R. 695 (9th Cir. BAP 1995). In particular, the bankruptcy court relied on *In re Eashai,* 167 B.R. 181, 185 (9th .Cir. BAP 1994). We recently affirmed the BAP's decision in *Eashai,* and in doing so approved of the BAP's general approach to non-dischargeability of credit card debt. *Citibank (South Dakota), N.A. v. Eashai (In re Eashai),* 87 F.3d 1082 (9th Cir.1996)(*Eashai*).

■ In *Eashai* we explained that our settled approach to claims of fraud under section 523(a)(2)(A) requires an affirmative representation by the debtor and a showing of reliance by the person claiming fraud as well as that the debt sought to be discharged was a proximate result of the representation. *Id.* at 1086.

> The creditor must show that (1) the debtor made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations; (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

*Britton v. Price (In re Britton),* 950 F.2d 602, 604 (9th Cir.1991). Applying these elements to the situation of credit card debt we held that there are three essential inquiries: (1) did the card holder fraudulently fail to disclose his intent not to repay the credit card debt, (2) did the card issuer justifiably rely on a representation by the debtor and (3) was the debt sought to be discharged proximately caused by the first two elements. *Eashai,* 87 F.3d at 1088. In *Eashai* we stated that in determining whether there was

a lack of intent to repay, a finder of fact may refer to twelve non-exclusive factors that the BAP has found useful.[1]

Our discussion in *Eashai* recognized that how we apply the traditional elements of fraud to credit card debt depends much upon how we characterize the relationship between the credit card issuer and the credit card holder. *Eashai* was a case involving an elaborate credit card kiting scheme in which the card holder made minimum monthly payments on his numerous credit cards by obtaining cash advances on other credit cards. In such a situation the focus of the fraudulent conduct was the creation of an appearance of financial solvency and continuing monthly payment which allowed the card holder to fail to disclose that he had no intent to repay the credit card debt that he was incurring. *Id.* at 1088–89. We held that in such a case, the debtor had a duty to disclose to the card issuer that he indeed had no intention of repaying the debt even though he had created the appearance of solvency. *Id.* at 1089.

■ Our discussion in *Eashai* identified two separate points in the relationship between the credit card issuer and the card holder. First, there is the point at which the credit card is issued. Our discussion assumed that at this point there is a representation by the card holder, in accepting the credit card, that he has the intention of paying for the charges incurred. *Id.* Second, in cases of fraud there is the point at which the card holder forms an intent not to repay the debt which he is incurring—for instance, by involving the credit card in an elaborate kiting scheme. In *Eashai* we explained that the card holder has a duty to disclose his new state of mind if he no longer has the intent to

1. The factors are as follows:
"1. The length of time between the charges made and the filing of bankruptcy;
2. Whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;
3. The number of charges made;
4. The amount of the charges;
5. The financial condition of the debtor at the time the charges are made;
6. Whether the charges were above the credit limit of the account;

7. Whether the debtor made multiple charges on the same day;
8. Whether or not the debtor was employed;
9. The debtor's prospects for employment;
10. Financial sophistication of the debtor;
11. Whether there was a sudden change in the debtor's buying habits; and
12. Whether the purchases were made for luxuries or necessities." *Eashai,* 87 F.3d at 1087–88.

repay the credit card debt which he is incurring. *Id.*

■ Our focus on the initial representation of intent to repay upon receiving a credit card, and the duty to disclose the formation of a subsequent intent not to repay was especially useful in *Eashai* because our inquiry was into whether the *entire* debt on the credit card was incurred through fraud by inclusion of that credit card in a kiting scheme. However, *Eashai* was in one aspect not a typical credit card case. *See id.* at 1085 ("This is not a typical credit card fraud case.") In many credit card cases the inquiry is not whether the card holder lacked an intent to repay *all* of the charges made on the card because of a fraudulent financial scheme, but rather whether the card holder lacked an intent to repay when making certain *individual* charges because he planned to shortly discharge them in bankruptcy. This behavior is commonly referred to as "loading up."

■ In cases where the question is simply whether a card holder defrauds a card issuer by making charges when he plans to discharge them in bankruptcy, we should look to whether the *individual* charges were made with a fraudulent intent. This inquiry is easily applied if we view each individual credit card transaction as the formation of a unilateral contract between the card holder and card issuer consisting of the following promise in exchange for performance: the card holder promises to repay the debt plus to periodically make partial payments along with accrued interest and the card issuer performs by reimbursing the merchant who has accepted the credit card in payment.[2] *See Restatement (Second) of Contracts,* § 31 Comment b. (1979) ("Where there is a continuing guaranty as to future loans to be made by the offeree and each loan ... furnishes the sole consideration for the corresponding part of the guaranty, the guaranty is often characterized as an offer for a series of separate contracts."); *see also, In re Ward,* 857 F.2d 1082, 1086–87 (6th Cir.1988) (Merritt, J., dissenting) (characterizing a

credit card transaction as a unilateral contract, citing Restatement (Second) of Contracts, at § 31, and collecting state court decisions).

■ In applying the elements of fraudulent misrepresentation to individual credit card charges, the necessary element of a representation made by the debtor is present in the implied representation of an intent to perform the unilateral contract by repaying the amount charged. When the card holder uses his credit card, he makes a representation that he intends to repay the debt. "The intention to perform an agreement may be expressed but it is normally merely to be implied from the making of the agreement." Restatement (Second) of Torts, § 530(*l*) Comment c. When the card holder uses the card without an intent to repay, he has made a fraudulent representation to the card issuer. "A representation of the maker's own intent to do or not do a particular thing is fraudulent if he does not have that intention." *Id.* at § 530(1). "Since a promise necessarily carries with it the implied assertion of an intention to perform, it follows that a promise made without such an intention is fraudulent and actionable in deceit." *Id.* at § 530(*l*) Comment c. Thus, the central inquiry in determining whether there was a fraudulent representation is whether the card holder lacked an intent to repay at the time he made the charge.

■ We emphasize that the representation made by the card holder in a credit card transaction is not that he has an *ability* to repay the debt; it is that he has an *intention* to repay. Indeed, section 523(a)(2) expressly prohibits using a non-written representation of a debtor's financial condition as a basis for fraud.

■ Thus, the focus should not be on whether the debtor was hopelessly insolvent at the time he made the credit card charges. A person on the verge of bankruptcy may have been brought to that point by a series of unwise financial choices, such as spending beyond his means, and if ability to repay

---

2. The nature of the contract does not change significantly in the case of a cash advance made by the card issuer, as in this case. The promise by the card holder remains the same. The performance by the card issuer is to advance cash.

were the focus of the fraud inquiry, too often would there be an unfounded judgment of non-dischargeability of credit card debt. Rather, the express focus must be solely on whether the debtor maliciously and in bad faith incurred credit card debt with the intention of petitioning for bankruptcy and avoiding the debt. A finding that a debt is non-dischargeable under 523(a)(2)(A) requires a showing of actual or positive fraud, not merely fraud implied by law. *Public Finance Corp. of Redlands v. Taylor (In re Taylor),* 514 F.2d 1370, 1373; *see also* 124 Cong.Rec. H11089 (Sept. 28, 1978) (statement of Rep. Edwards) *reprinted in* 1978 U.S.C.C.A.N. 5787, 6436, 6453 ("Subparagraph (A) is intended to codify current case law . . . which interprets 'fraud' to mean actual or positive fraud rather than fraud implied in law."). Actual fraud "is the type involving moral turpitude, or intentional wrong, and thus there can be no mere imputation of bad faith." *Taylor,* 514 F.2d at 1373.[3] While we recognize that a view to the debtor's overall financial condition is a necessary part of inferring whether or not the debtor incurred the debt maliciously and in bad faith, and that the twelve factors we set out in *Eashai* are useful for arriving at a finding of bad faith, the hopeless state of a debtor's financial condition should never become a substitute for an actual finding of bad faith.

We have previously held that reckless disregard for the truth of a representation satisfies the element that the debtor has made an intentionally false representation in obtaining credit. *Houtman v. Mann (In re Houtman),* 568 F.2d 651, 656 (9th Cir.1978). However, in applying the concept of reckless disregard for the truth of a representation in the case of credit card debt, we must be careful to keep in mind that the representation being made by the card holder is solely as to *intent* to repay, not as to the debtor's *ability* to repay. Thus, courts faced with the issue of dischargeability of

credit card debt must take care to avoid forming the inquiry under section 523(a)(2)(A) as whether the debtor recklessly represented his financial condition. The correct inquiry is whether the debtor either intentionally or with recklessness as to its truth or falsity, made the representation that he intended to repay the debt.

As we emphasized in *Eashai,* the other elements of fraud normally required in section 523(a)(2)(A) cases also apply in the case of credit card debt. *Eashai,* 87 F.3d at 1088. Thus, to find an individual credit card charge nondischargeable the bankruptcy court must also find justifiable reliance by the card issuer on the card holder's representation of intent to repay, and must find that representation and the card issuer's reliance on it was the proximate cause of the credit card debt sought to be discharged. As we explained in *Eashai,* the credit card issuer justifiably relies on a representation of intent to repay as long as the account is not in default and any initial investigations into a credit report do not raise red flags that would make reliance unjustifiable. *Eashai,* 87 F.3d at 1091.

## B. *REVIEW OF BANKRUPTCY COURT'S FINDINGS*

The bankruptcy court found the elements of reliance and proximate causation satisfied, and then focused on the issue of whether Anastas made the charges without an intent to repay. The bankruptcy court held that American Savings Bank proved by a preponderance of the evidence that Anastas did not have the intent to repay the credit card debt at the time he incurred it. Anastas argues that this finding was clearly erroneous. Applying the discussion of the requirements of actual fraud set forth above, we agree that the finding was clearly erroneous.

The bankruptcy court improperly focused almost exclusively on Anastas' financial con-

---

**3.** Although bad faith and intent to defraud must be found as an element of a showing of fraud under section 523(a)(2)(A), and may not be implied in law, such a rule does not of course preclude the possibility of a finder of fact inferring or implying bad faith and intent to defraud

based on the totality of the circumstances when convinced by a preponderance of the evidence. *See Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991) (establishing preponderance of evidence burden of proof).

dition. The court explained that since his living expenses exceeded his income, Anastas could not have had any realistic hope of repaying his credit card debt. However, apart from the fact of his financial condition, the record contains no other persuasive evidence of an intent to defraud American Savings Bank by making credit card charges which would then be discharged in bankruptcy. First, Anastas incurred the credit card debt over a six month period, during which time he always made his monthly payments. Such behavior is inconsistent with the intent to incur a debt without repaying it. There is no evidence, such as in *Eashai*, that the payments were made through any sort of kiting scheme. Second, Anastas offered uncontradicted testimony that he contacted American Savings Bank in an attempt to work out an alternative arrangement for repaying his credit card debt. Third, Anastas testified that he always possessed the intent to repay his credit card debts, but that he had a gambling addiction which led him into unexpected financial circumstances.

Obviously, Anastas had a serious gambling problem. Although it may have been unlikely that he would win back the money to be able to pay back the cash advances that financed the gambling, the record fully supports Anastas' good faith intention to do so. There is no basis in the record for a finding of the type of malicious and bad faith intent not to repay that is necessary for a finding of actual fraud under section 523(a)(2)(A). Thus, we hold that the bankruptcy court was clearly erroneous in finding an intent to defraud.

## IV. CONCLUSION

We reverse the decision of the BAP, and remand for the bankruptcy court to enter judgment in favor of Anastas.

REVERSED and REMANDED.