In re Jack TROMBADORE and P.
Elaine Trombadore, Debtors.

NEW JERSEY LAWYERS' FUND FOR
CLIENT PROTECTION, Plaintiff,

v.

Jack TROMBADORE and P. Elaine
Trombadore, Defendants.

Civil Action No. 94–2935(MLP).

United States District Court,
D. New Jersey.

Oct. 22, 1996.

Roger S. Steffens, N.J. Lawyers' Fund for Client Protection, Trenton, New Jersey, for Plaintiff.

Jack Trombadore, Somerville, New Jersey, Pro se for Defendants.

## OPINION

PARELL, District Judge.

This matter is before the Court on appeal from Orders of the Bankruptcy Court dated March 18, 1995, discharging certain debts and declaring nondischargeable certain debts of defendant/appellee Jack Trombadore. Plaintiff/appellant New Jersey Lawyers Fund for Client Protection appeals those orders discharging debts, and defendant/appellee cross appeals those debts declared nondischargeable. For the following reasons, the Orders of the Bankruptcy Court are affirmed and the appeals therefrom are denied.

## BACKGROUND

Defendant/appellee, Jack Trombadore ("Trombadore"), was an attorney in the State of New Jersey prior to being disbarred by consent on February 2, 1993, in relation to questionable loans he obtained from his clients. (Plaintiff/Appellant's Br. (hereinafter "Appellant's Br.") at 3.) Plaintiff/appellant, New Jersey Lawyers Fund for Client Protection ("the Fund"), was created by the Supreme Court of New Jersey to alleviate losses inflicted upon clients by the dishonest practices of members of the New Jersey Bar. (*Id.*)

Between 1981 and 1991, Trombadore obtained loans from several of his clients in addition to other sources. (*Id.*) Although fifty-six claims were filed with the Fund regarding Trombadore's practices, only twenty-seven were satisfied by the Fund. (*Id.*) Loans procured from twenty-one former clients were at issue in the bankruptcy proceeding and are the basis of this appeal. (*Id.* at 4.)

Beginning in approximately 1977, Trombadore became severely financially unstable. (*Id.* at 5.) Between 1977 and 1991, Trombadore's indebtedness increased to several million dollars, reaching a high of $3,816,890.50 in 1991. (*Id.* at 6.) His answers to interrogatories indicated that he did not own any personal property with an individual value in excess of $2,500 during that period. (*Id.* at 7.) Furthermore, he stated at deposition that his real property was heavily encumbered. (*Id.*) His home was mortgaged for $160,000, it had a second mortgage of $75,000, and was offered as collateral on another $310,000 mortgage. (*Id.*) Following the satisfaction of these mortgages in 1986, Trombadore placed two additional mortgages total-

ing $280,000 on his home. (*Id.* at 7–8.) In addition, Trombadore owned a second piece of property, which was also encumbered by several mortgages prior to being sold in 1986. (*Id.* at 8.) Those mortgages on his second property were satisfied following the sale of the property. (*Id.* at 8.)

On October 9, 1991, Trombadore and his wife filed for bankruptcy under Chapter 7 of the Bankruptcy Code. (*Id.* at 3.) Trombadore's creditors promptly filed claims with the Fund to recover losses they incurred because of Trombadore's alleged dishonesty. (*Id.*) The Fund awarded a total of $604,-963.76 to twenty-seven different claimants. (*Id.*) In return, the Fund received assignment of all the rights of each claimant related to Trombadore's questionable practices. (*Id.*) The Fund then initiated proceedings, pursuant to 11 U.S.C. § 523(a)(2)(A),[1] to have the loans obtained while he was severely indebted declared nondischargeable. (*Id.* at 4.)

The Fund argued to the Bankruptcy Court that because Trombadore was so deeply in debt, there was no possibility he could repay any new loans. (*Id.* at 11.) The Fund further asserted that Trombadore was fully aware of his financial status and his inability to repay any loan when he approached his clients for money. (*Id.*) Accordingly, the Fund claimed, his failure to disclose his financial situation when obtaining new loans from his clients constituted fraud, and could not be discharged through bankruptcy. (*Id.* at 10.)

The Bankruptcy Court independently evaluated each loan and inquired as to whether Trombadore had made any fraudulent representations in furtherance of the acquisition of any loan. (*Id.* at 13.) The court found that the transactions involving Harry and Shirley Schades, Girard and Mary Mint, John McMullen, Jr., and John Kaminski, were not in fact loans. (Appellee/defendant's Reply Br. (hereinafter "Appellee's Br.") at 20–26.) Rather, the court found that Trombadore

had fraudulently misrepresented that the money obtained from the above clients was an investment in a construction business, and not a loan. (*Id.*) Because Trombadore did not invest these funds, nor did he have any intention to invest these funds, the court found that the money was obtained via fraud. (*Id.*)

In contrast, the Bankruptcy Court found that the remaining transactions were in fact loans. (Appellant's Br. at 12–15 (quoting Trial Tr. for May 3, 1994.)) In addition, the court found that no evidence was presented that these loans were obtained via fraud. (*Id.*) The court refused to adopt the Fund's position that because Trombadore was nearly four million dollars in debt at the time he obtained certain loans, that he could have had no intention of ever repaying these loans. (*Id.*) Instead, the court held that the correct inquiry is whether sufficient evidence was presented that Trombadore intended to default on any particular loan. (*Id.*) The court found that because Trombadore had consistently repaid his loans in the past by rolling them over, there was no reason to believe that he intended to default on any specific loan simply because he was financially insecure. (*Id.*)

Finally, the Fund argued that because Trombadore was hopelessly insolvent, his failure to disclose his financial situation alone constituted fraud under § 523(a)(2)(A). (*Id.*) The Court held, however, that because the Fund had not offered any evidence that Trombadore had made any fraudulent representations, or any representations at all, to obtain the loans, that no § 523 action could be maintained. (*Id.*) When the Fund stated that Trombadore had made no representations, but that his hopeless insolvency itself was sufficient to establish fraud under § 523, the court disagreed, holding that hopeless insolvency alone "will not cut it." (*Id.* at 15.)

The Fund here appeals the decision of the Bankruptcy Court to discharge those debts it

---

**1.** 11 U.S.C. § 523(a)(2)(A) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by—
(A) false pretenses, a false, or actual fraud....

11 U.S.C. § 523(a)(2)(A).

found were obtained without fraud. (*Id.* at 10.) It argues that the Bankruptcy Court employed an "insurmountable" standard to establish fraud. (*Id.* at 18.) The Fund further argues that failure to disclose a material fact can constitute fraud under § 523, and that hopeless insolvency is clearly a material fact. (*Id.* at 16.)

Trombadore appeals the Bankruptcy Court's holding that several of his debts were obtained via fraud. (Appellee's Br. at 38, 41, 49.) He argues that the court failed to fully consider the facts surrounding the "loans" declared nondischargeable, and therefore reached an unjust conclusion. (*Id.* at 38–49.) His brief to this Court cites numerous facts he believes the Bankruptcy Court ignored when it determined certain "loans" he received were not actually loans. (*Id.*)

## DISCUSSION

■ In reviewing an order of the Bankruptcy Court, a district court applies a clearly erroneous standard to the Bankruptcy Court's findings of fact and a *de novo* standard to the Bankruptcy Court's legal conclusions. *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir.1989); *In re Morrissey*, 717 F.2d 100, 104 (3d Cir.1983); Bankruptcy Rule 8013. Findings of fact are clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been committed. *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541–42, 92 L.Ed. 746 (1948). When reviewing an ultimate fact,[2] this Court applies a mixed standard of review, "accept[ing] the trial court's findings of historical or narrative facts unless they are clearly erroneous, but exercis[ing] a plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts." *In re Sharon Steel Corp.*, 871 F.2d at 1223 (quoting *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669

F.2d 98, 103 (3d Cir.1981)). Accordingly, mixed questions "must be divided into their respective components and the appropriate test applied." *In re Brown* 951 F.2d 564, 567 (3d Cir.1991).

■ The Bankruptcy Court's determination that several of Trombadore's loans were not obtained via fraud (because his failure to disclose his insolvency is not sufficient to establish fraud) is a mixed question of law and fact, and consequently must be appropriately divided. Whether failing to disclose his financial situation can constitute fraud is a question of law, and is reviewed *de novo*. *See In re Van Horne*, 823 F.2d 1285, 1288 (8th Cir.1987) (silence can, as a matter of law, constitute fraud). In contrast, whether the Fund established that Trombadore satisfied that standard is a question of fact, and is reviewed under the clearly erroneous standard. *See In re Black*, 787 F.2d 503, 505 (10th Cir.1986) (Bankruptcy Court's fraud finding affirmed as not clearly erroneous).

This Court's review of the Bankruptcy Court's determination that simply failing to disclose insolvency is insufficient as a matter of law to establish fraud under § 523 requires a two-part analysis. First, whether silence can be a "representation" as is required under § 523(a)(2)(A); and second, assuming silence can be a representation, whether silence regarding severe financial insecurity, can, on its own, rise to the level of fraud.

Section 523(a)(2)(A) exempts from discharge in a bankruptcy proceeding any debts incurred via "false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523. Although it appears no Third Circuit case specifically addresses this issue, the Eighth Circuit in *In re Van Horne*, held that a debtor's silence as to a material fact may constitute fraud in a § 523 action. 823 F.2d at 1288. *In re Van Horne* involved a debt-

---

**2.** The Third Circuit distinguishes among three types of facts—basic facts, inferred factual conclusions, and ultimate facts. "Basic facts are the historical and narrative events elicited from evidence ... Inferred factual conclusions are drawn from basic facts ... No legal precept is implicated in drawing permissible inferences." *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102 (3d Cir.1981). Findings of these two types of facts are subject to the clearly erroneous standard. *Id.* Ultimate facts are expressed in the language of a standard of law, "*e.g.* an actor's conduct was negligent; the injury occurred in the course of employment; the rate is reasonable." *Id.* (quoting *Smith v. Harris*, 644 F.2d 985, 990 n. 1 (3d Cir.1981) (Aldisert, J., concurring)).

or's procurement of a loan from his mother-in-law days before leaving his wife. *Id.* The bankruptcy court and the district court found that the debtor intended to deceive the mother-in-law in order to obtain a loan. *Id.* The Eighth Circuit, in affirming the lower court's refusal to discharge the loans, reasoned that the Bankruptcy Code was not intended to protect dishonest practices. *Id.* The Court of Appeals further stated that a creditor has the right to be informed of all facts related to the transaction and held that the debtor's silence in this case did constitute fraud. *Id.* In addition, the court noted that bankruptcy courts have "overwhelmingly" recognized that silence regarding a material fact can be a fraudulent misrepresentation under § 523. *Id. See also, In re Weinstein,* 31 B.R. 804, 809 (Bankr.E.D.N.Y.1983); *In re Reitz,* 134 B.R. 131, 133 (Bankr.D.Del.1991).

■ This Court finds persuasive the Eighth Circuit's determination that silence can rise to the level of fraud. This is not to say, however, that silence alone necessarily constitutes fraud. For example, in *In re Van Horne,* the Eighth Circuit affirmed the lower court's fraud findings based on separate factual findings that the debtor intentionally concealed his plan to divorce the creditor's daughter immediately after procuring the loan. *Id.* at 1287.

The relevant inquiry thus becomes whether failure to reveal hopeless insolvency by itself can constitute fraud. The Fifth Circuit in *In re Boydston,* held that fraudulent intent may be inferred where hopeless insolvency makes repayment of a debt impossible. 520 F.2d 1098, 1101 (5th Cir.1975). The court questioned a prior Fifth Circuit ruling that credit card debts obtained while concealing insolvency were dischargeable, but refused to specifically overrule the decision because it was unnecessary for the resolution of the case. *Id. See Davison–Paxon Co. v. Caldwell,* 115 F.2d 189 (5th Cir.1940), *cert. denied,* 313 U.S. 564, 61 S.Ct. 841, 85 L.Ed. 1523 (1941) (debts created while hopelessly insolvent are dischargeable).

Several bankruptcy courts have followed the Fifth Circuit's holding. For example, in *In re Schnore,* the court held that a debtor's intent not to repay a debt can be inferred from the surrounding circumstances, including the fact that he failed to disclose an outstanding credit card balance of $15,000. 13 B.R. 249, 256 (Bankr.W.D.Wis.1981). *See also, In re Black,* 373 F.Supp. 105, 107 (E.D.Wis.1974) (evidence that an debtor was accumulating debt at a rate of $2,400 per month while insolvent was sufficient to establish fraud); *In re Ray,* 51 B.R. 454 (Bankr. D.Haw.1985) (insolvency and unemployment sufficient to infer intent not to repay); *In re Kurali,* 132 B.R. 468 (Bankr.M.D.Fla.1991) (insolvency and prolonged unemployment sufficient to infer intent to not repay $70,000 credit card debt).

In contrast, the majority of Circuit courts that have addressed the issue have held that mere insolvency is insufficient to establish fraud.[3] *See, e.g., In re Anastas,* 94 F.3d 1280, 1284–85 (9th Cir.); *In re Hunter,* 780 F.2d 1577, 1579 (11th Cir.1986); *In re Black,* 787 F.2d 503, 505 (10th Cir.1986). For example, the Ninth Circuit held that a fraud finding under § 523(a)(2)(A) "requires a showing of actual or positive fraud, not merely fraud implied by law." *In re Anastas,* 94 F.3d at 1284–85. It further stated that bankruptcy courts should not focus on hopeless insolvency, but rather on "whether the debtor maliciously and in bad faith incurred [the debt] with the intention of petitioning for bankruptcy and avoiding the debt." *Id.* Similarly, the Eleventh Circuit held that the debtor must commit "positive fraud ... involving moral turpitude or intentional wrong...." *In re Hunter,* 780 F.2d 1577, 1579 (11th Cir.1986). *See also Collier on Bankruptcy,* § 523.08 (15th ed. 1987) (fraud under § 523(a)(2)(A) involves "moral turpitude or intentional wrong").

■ The bankruptcy judge in the instant case, like the majority of circuit courts that have addressed the issue, held that hopeless insolvency alone was insufficient as

---

**3.** The Third Circuit does not appear to have specifically addressed whether mere insolvency can constitute fraud in a § 523(a)(2)(A) dischargability proceeding. The court has held, however, that mere insolvency does not constitute fraud entitling another party to rescind a contract of sale. *In re Paragon Securities Co.,* 589 F.2d 1240, 1244 (3d Cir.1978).

a matter of law to establish fraud. Although a district court reviews questions of law *de novo,* this Court agrees with the determination of the Bankruptcy Court. In order for a creditor to have a debt declared non-dischargeable, the creditor must establish by a preponderance of the evidence that the debt was incurred via fraud. *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991). Although incurring debt while insolvent may be indicative of an intent not to repay, this Court adopts the Ninth Circuit's holding that "the hopeless state of a debtor's financial condition should never become a substitute for an actual finding of bad faith." *In re Anastas,* 94 F.3d at 1286–87.

■ In the case at bar, the Fund's complaint contained no allegations of bad faith or an intent to not repay any specific loan. (Appellant's Br. at 12–15.) Rather, the Fund relied entirely on the fact that Trombadore was nearly four million dollars in debt to establish fraud. (*Id.*) The Bankruptcy Court correctly held that this alone "will not cut it." (*Id.* at 15.) It is entirely feasible that Trombadore was attempting to alleviate certain debts by incurring more loans, and that he intended to repay each individual loan, although it seemed impossible to satisfy the loans collectively. While this is certainly well beyond an unwise practice, it does not amount to fraud. More is required than poor business judgment to establish fraud, and the Fund did not allege any facts to support a finding of fraud. Furthermore, because the Bankruptcy Court applied the correct legal standard, that court's factual findings are subject to review under the clearly erroneous standard. *See, e.g., In re Black,* 787 F.2d at 505. As the factual aspect of its determination that Trombadore did not obtain the loans in question via fraud was not clearly erroneous, this Court affirms the decision of the Bankruptcy Court and denies the Fund's motion.

■ Likewise, when reviewing the factual findings supporting the Bankruptcy Court's holding that several of the debts were fraudulently incurred, this Court applies a clearly erroneous standard. *See, e.g., In re Stanley,* 66 F.3d 664, 667 (4th Cir.1995). The Bankruptcy Court found that because Trombadore represented to several creditors that he intended to invest the funds given to him into a construction business, but never invested or intended to invest any of this money, fraud was established. (Appellee's Br. at 38–49.) Trombadore argues that the bankruptcy judge ignored important facts in declaring these debts non-dischargeable. (*Id.*) In support, Trombadore points to evidence that the creditors knew that the money was not an investment but a personal loan. (*Id.* at 26.)

■ This Court, however, is unwilling to declare the decision of the Bankruptcy Court clearly erroneous. The bankruptcy judge specifically asked each creditor whether the money given by them to Trombadore was a personal loan or an investment. (*Id.* at 41–42, 50.) When each stated that the money was intended as an investment, he further inquired whether the creditors would have loaned Trombadore these funds simply as a personal loan. (*Id.*) Each replied in the negative. (*Id.*) Because this Court is satisfied that the Bankruptcy Court weighed all the relevant evidence in determining whether Trombadore fraudulently obtained several loans, it does not find that court's decision to be clearly erroneous.[4]

■ In addition, in his lengthy cross-appeal Trombadore asserts that the Bankruptcy Court erred on several other points. He claims that (1) the Bankruptcy Court mistakenly directed the Fund to file a second amended complaint without the Fund filing a motion for leave to amend;[5] (2) that the

---

**4.** The Bankruptcy Court's finding regarding Trombadore's claim that he had no fiduciary relationship with one of his creditors (Kaminski) is similarly not clearly erroneous and the finding of the court below is affirmed. The Bankruptcy Court fully inquired as to the relationship between Trombadore and Kaminski and found that a fiduciary relationship existed. Trombadore's

brief contains nothing to support the reversal of this finding.

**5.** Under Fed.R.Civ.P. 15(a), leave to amend should be freely given. Although the Fund did not request leave to amend, several circuit courts have held that easily amended complaints should not be dismissed for failure to state a claim simply for omitting a request for leave to amend.

Fund mistakenly assumed the rights of creditors;[6] and (3) that a single claim was not timely filed.[7] However, because the Bankruptcy Court applied the correct law, and because its findings of fact are not clearly erroneous, these claims are without merit. Accordingly, the decision of the Bankruptcy Court is affirmed and Trombadore's cross-appeal is denied.

*See Bank v. Pitt,* 928 F.2d 1108, 1112 (11th Cir.1991) (district court improperly dismissed claim for failing to file motion for leave to amend); *Oliver Schools, Inc. v. Foley,* 930 F.2d 248, 253 (2d Cir.1991) (leave to amend should be granted without motion when the parties' desire to amend is easily inferred).

**6.** Trombadore asserts that the Fund should not have assumed the debts incurred by certain creditors for various reasons, but does not dispute that the Fund was assigned these debts. The Bankruptcy Court correctly found irrelevant the reasoning behind the Fund's acceptance of the assignment of debts. *See Commercial Standard*

*Ins. Co. v. American Employers Ins. Co.,* 209 F.2d 60, 66 (6th Cir.1954) (basis for subrogation irrelevant). Furthermore, it is within the discretion of the Fund to determine which debts require reimbursement. N.J.Ct.R. 1:28–3(b).

**7.** Under N.J.Ct.R. 1:28–3(a)(3), the time to file can be extended in the discretion of the Fund. The time limit to file claims with the Fund was extended here due to the negligence of an attorney representing a creditor. Furthermore, the Fund filed its complaints against Trombadore in Bankruptcy Court prior to the filing deadline. Accordingly, no error was committed.