In re Robert HEARN, Debtor.

AMERICAN EXPRESS TRAVEL RELATED SERVICES, INC., Plaintiff,

v.

Robert A. HEARN, Jr., Defendant.

Bankruptcy No. 94–67959.
Adversary No. 94–6644.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

April 11, 1997.

---

D. Ruth Primm, Atlanta, GA, for Plaintiff/Petitioner.

William D. Matthews, Greene, Buckley, Jones & McQueen, David P. Shaffner, Atlanta, GA, for Defendant/Respondent.

## ORDER

MARGARET H. MURPHY, Bankruptcy Judge.

Before the court is Debtor's motion for summary judgment. Plaintiff's complaint seeks a determination that its claim against Debtor, which arises from Debtor's use of Plaintiff's American Express Credit Card, is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) or § 523(a)(2)(B). Plaintiff also objects to Debtor's discharge on the grounds that Debtor failed to include on his bankruptcy schedules computer equipment purchased with the credit card.

## STATEMENT OF FACTS

Debtor first obtained the credit card from Plaintiff in March 1976. The credit card was canceled by Plaintiff May 5, 1994, when the balance owing was $42,557.86. The major part of that total first appeared on Debtor's credit card statements during the months of November 1993, December 1993, January 1994, and February 1994. Specifically, charges for the period September 29 through November 4 in the amount of $5,557.86 appeared on the November 4, 1993 statement and $5,100 was paid by Debtor. Charges for the period November 5 through December 5 in the amount of $12,074.85 appeared on the December 5, 1993 statement and $4,300 was paid by Debtor. Charges for the period December 5 through January 5 in the amount of $11,801.35 appeared on the January 5, 1994 statement. A check in the amount of $9,600 was sent in December as payment by Debtor but the check was not honored by Debtor's bank. Charges for the period ending February 4, 1994, in the amount of $20,889.60 appeared on the February 4, 1994 statement. Checks in the amount of $9,600 and $10,000 were sent as payment by Debtor but neither one of these two checks was honored by Debtor's bank. A third check in the amount of $9,600 was sent and was honored by Debtor's bank. The next three months' new charges were $368.93, $25.99 and $19.54, respectively. A $10,000 payment made in May 1994, the last statement, was also returned by Debtor's bank.

Debtor explained that from November 1993 to February 1994, Debtor used the credit card for purchases of computer equipment for his business, Atlan–Tech, Inc. ("Atlan–Tech"). The computer equipment was, in the course of Atlan–Tech's business, integrated into systems produced and resold to

Atlan–Tech's customers. The computers were not listed on Debtor's bankruptcy schedules because Debtor considered them the property of Atlan–Tech. Other large amounts charged during the same period were for business travel expenses. The payments which were made during that period were with checks drawn on Atlan–Tech's bank account. From November 1993 to February 1994, Debtor's business was having financial difficulty as a result of a burglary at Debtor's business premises and Debtor was using his individual American Express Credit Card to help finance Atlan–Tech. Debtor explained, however, that he expected to be able to pay the charges for items provided to Atlan–Tech from Atlan–Tech funds which would become available from the insurance proceeds for the burglary or, alternatively, from the proceeds from the sale of a parcel of real estate owned by Atlan–Tech which Debtor had listed for sale. Funds appeared from neither source.

Debtor also explained that the checks written to Plaintiff in January and February 1994, were not honored by Debtor's bank because, unknown to Debtor when written, the bank was setting off funds in Atlan–Tech's checking account against amounts owed to the bank. Debtor explained that when he learned of the setoffs, he discontinued using the credit card for large purchases for his business.

Plaintiff contends Debtor's actions evidenced a lack of intent to repay the charges made on the credit card. Plaintiff points to a change in Debtor's charging patterns beginning in October 1993, and Plaintiff notes that four of Debtor's last five checks were not honored by the bank on which they were drawn. Plaintiff highlights the deteriorating financial condition of Debtor's business and, during the relevant period, Debtor charged a total amount larger than his personal gross annual income form 1993 and 1994. Plaintiff shows that many of the remaining charges were incurred at restaurants for food, drinks and tips and at upscale clothing stores. Plaintiff also points out that Debtor's purchase of computers for his business violated Debtor's credit card agreement with Plaintiff, which prohibited purchasing products for resale.

### CONCLUSIONS OF LAW

Pursuant to FRCP 56(c), incorporated in Bankruptcy Rule 7056, a party moving for summary judgment is entitled to prevail if no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. The burden of proof is on the moving party to establish that a genuine issue of material fact is absent. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir.1991). Evidence is to be construed in the light most favorable to the nonmoving party. *Id.; Rollins v. TechSouth, Inc.*, 833 F.2d 1525 (11th Cir.1987). When the nonmoving party bears the burden of proof at trial, the moving party in a summary judgment motion must show that the nonmoving party has no evidence to support its case or present affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial. *Hammer v. Slater*, 20 F.3d 1137 (11th Cir. 1994). Once the moving party has met its initial burden by negating an essential element of the nonmoving party's case, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact. *Id.* Unless the moving party satisfies its burden to show an absence of a genuine issue of material fact, no burden of going forward arises for the opposing party to show that a genuine issue of material fact exists. *Adickes*, 398 U.S. at 157, 90 S.Ct. at 1608; *Clark*, 929 F.2d at 607. This posture exists regardless of which party has the burden of proof at trial. *Id.*

A motion for summary judgment cannot be denied merely because issues of motive or intent are involved. When a rational trier of fact could not find for the nonmoving party based on the record as a whole, no triable issue exists and summary judgment is appropriate. *Morgan v. Harris Trust & Savings Bank of Chicago*, 867 F.2d 1023 (7th Cir. 1989).

■ A debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) to the extent that money, property, services, or an extension,

renewal, or refinancing of credit, was obtained by

    (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or insider's financial condition[.]

The burden of proof is upon the creditor to show by a preponderance of evidence that the debt is nondischargeable. *Grogan v. Garner,* 498 U.S. 279, 285–87, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). Here, Plaintiff cannot support a claim that Debtor's use of his credit card constituted obtaining credit by false pretenses or false representation. In the Eleventh Circuit Court of Appeals, the seminal case on that issue is *First National Bank of Mobile v. Roddenberry,* 701 F.2d 927 (11th Cir.1983). Although *Roddenberry* was decided under § 17a(2) of the Bankruptcy Act, the similarities between § 17a(2) and § 523(a)(2)(A) give the case law construing § 17a(2) precedential value in § 523(a)(2)(A) cases. *Birmingham Trust National Bank v. Case,* 755 F.2d 1474 (11th Cir.1985); *Chase Manhattan Bank v. Carpenter,* 53 B.R. 724 (Bankr.N.D.Ga.1985).

*Roddenberry* is a credit card case. In reaching its conclusion that mere use of a credit card without the ability or intent to repay did not constitute obtaining credit by false pretenses or false representation, the *Roddenberry* court noted that credit card companies routinely "encourage or willingly suffer credit extensions beyond contractual credit limits." *Id.* at 932. The court concluded that § 17a(2) "should not be construed to afford additional protection for those who unwisely permit or encourage debtors to exceed credit limits." *Id.* The court, therefore, held:

Voluntary assumption of risk on the part of a [credit card company] continues until

it is clearly shown that the [credit card company] unequivocally and unconditionally revoked the right of the cardholder to further possession and use of the card, and until the cardholder is aware of this revocation.

*Id.*

The *Roddenberry* court noted in footnote 3 the addition of actual fraud to § 523(a)(2)(A) [formerly § 17(a)2] and hypothesized that addition "may alter the outcome in certain cases where debtors obtain credit without a present intention of repayment." In bankruptcy courts in the Eleventh Circuit, the most frequently cited opinion on the "actual fraud" issue is *Chase Manhattan Bank v. Carpenter,* 53 B.R. at 725 (Bankr.N.D.Ga. 1985). *See, for example, Chase Manhattan Bank, NA v. Ford,* 186 B.R. 312 (Bankr. N.D.Ga.1995); *American Express Travel Related Services Co., Inc. v. Rusu,* 188 B.R. 325 (Bankr.N.D.Ga.1995). The *Carpenter* case concludes that, in dischargeability proceedings involving credit cards, actual fraud may be shown by demonstrating the debtor used the credit card with no present intention to repay. The *Carpenter* case noted that an inability to pay—hopeless insolvency—does not support an inference that the debtor lacked an intent to repay. *See also, Anastas v. American Savings Bank,* 94 F.3d 1280 (9th Cir.1996); *Chase Manhattan Bank, NA v. Ford,* 186 B.R. 312 (Bankr.N.D.Ga.1995); *American Express Travel Related Services Co., Inc. v. McKinnon,* 192 B.R. 768 (Bankr. N.D.Ala.1996).[1] *But see, American Express Centurion Bank v. Hinshaw,* 199 B.R. 786 (Bankr.M.D.Fla.1995); *Southtrust Bank of Alabama v. Moody,* 203 B.R. 771 (Bankr. M.D.Fla.1996).[2] The *Carpenter* court also noted that mere violation of contractual pro-

1. The *McKinnon* court departed from the "totality of the circumstances" analysis espoused by the *Carpenter* court and chose instead the Common Law/Subjective analysis which characterized the use of a credit card as a promise to pay in the future which is actionable as fraud only if the debtor lacked the subjective intent to repay. The *McKinnon* court relies upon the instructions of the U.S. Supreme Court *Field v. Mans,* —— U.S. ——, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), that bankruptcy courts should apply common law principles to dischargeability issues.

2. The courts in Florida employ a standard that a credit card debt is nondischargeable pursuant to § 523(a)(2)(A) if the debtor had no intention to repay the debt or if the debtor *knew* he would be unable to repay the debt. Both prongs include a *mens rea* element but the knowing inability to repay the debt would obviously be proven primarily by evidence of the debtor's financial condition.

visions in the credit agreement did not establish actual fraud.

■ The *Carpenter* court defined the five elements of actual fraud: (1) a representation which (2) the debtor knew was false, (3) was made with an intent to deceive, (4) the creditor relied upon and (5) caused harm to the creditor. Twelve factors relevant to whether the debtor lacked an intent to repay were identified:

(1) The amount of time between the charges and the bankruptcy filing;

(2) Whether the debtor had consulted an attorney about filing bankruptcy when the charges were made;

(3) The number of charges;

(4) The amount of the charges;

(5) Debtor's financial condition when the charges were made;

(6) Whether the charges exceeded the credit limit;

(7) Whether the debtor made multiple charges on the same day;

(8) Whether the debtor was employed;

(9) The debtor's prospects for employment;

(10) The debtor's financial sophistication;

(11) A sudden change in the debtor charge pattern;

(12) Whether purchases were luxuries or necessities.

The plausibility of the debtor's explanations is significant in evaluating these factors. Additionally, the list is not exhaustive and is not intended to be used mechanically. *Signet Bank Card Center v. Brawner*, 124 B.R. 762 (Bankr.N.D.Ill.1991).

■ In Debtor's motion for summary judgment, Debtor attempts to negate the element of intent necessary for Plaintiff to prevail at trial.[3] Debtor has established by documentary evidence and by affidavit that no genuine dispute of material fact exists. The credit card statements establish the dates and types of charges made by Debtor. The nature and cause of the financial difficulties of Debtor's business are not disputed. Debtor's affidavit regarding his expectations of Atlan–Tech obtaining funds to repay the credit card charges is contradicted only by Plaintiff's argument that Debtor's expectations were unrealistic. The change in Debtor's charge patterns and the dishonored checks were plausibly explained by Debtor and no evidence to contradict those explanations was presented by Plaintiff.

Debtor's attempt to prop up his business temporarily by using his credit card for business purchases does not establish a lack of intent to repay. Debtor's expectation that funds would become available to Atlan–Tech to enable repayment of Plaintiff was not unreasonable during the four-month period that the major portion of the charges was made. Debtor was certainly optimistic and, in hindsight, perhaps immoderately so; his optimism proved unfounded but no evidence has been produced to support an inference that Debtor intended to defraud Plaintiff. Debtor's cessation of use of the credit card when he determined that Atlan–Tech's checks were being dishonored supports an inference that Debtor intended and expected to be able to repay Plaintiff from funds generated by Atlan–Tech. Debtor has explained that the computers were not included in his bankruptcy schedules by showing that the computers were purchased for his business and were integrated into systems produced and sold by Atlan–Tech.

■ The violation of Debtor's agreement with Plaintiff does not support a finding of

---

**3.** Neither the parties' briefs nor most of the case law on dischargeability of credit card debt addresses in any depth the issue of reliance. Reliance is problematic, as most authorities recognize that the creditor is not aware of any representation which a debtor makes at the time of a credit card use and therefore could not rely upon it. The cases which have addressed the reliance issue find that the reliance element is satisfied by the initial agreement between the debtor and the creditor which allows the credit card company to rely upon the debtor's good faith use of the credit card. *Citibank (South Dakota) NA v. Eashai*, 87 F.3d 1082 (9th Cir. 1996). Two recent cases held that use of a credit card involve neither a representation by the debtor nor reliance by the issuer. *AT & T Universal Card Services v. Alvi*, 191 B.R. 724 (Bankr.N.D.Ill.1996); *GM Card v. Cox*, 182 B.R. 626 (Bankr.D.Mass.1995).

actual fraud. Plaintiff presented no evidence or argument that Debtor provided to Plaintiff a false financial statement within the meaning of § 523(a)(2)(B). Accordingly, as Debtor has negated an essential element in each of the claims for relief presented by Plaintiff, it is hereby

ORDERED that Debtor's motion for summary judgment is granted.