**In re Oriol CRUZ, Debtor.**

**FIRST CARD SERVICES, INC., Plaintiff,**

v.

**Oriol CRUZ, Defendant.**

**Bankruptcy No. 94–12531–AJC.
Adv. No. 94–0958–BKC–AJC–A.**

United States Bankruptcy Court,
S.D. Florida,
Miami Division.

Feb. 24, 1995.

---

Scott W. Spradley, Rush, Marshall, Reber and Jones, P.A., Orlando, FL, David C. Tassell, Berrocal & Wilkins, P.A., Jupiter, FL, John H. Rahmlow, Becket & Watkins, Malvern, PA, for plaintiff.

Mark Evans Kass, Mark Evans Kass, P.A., Miami, FL, for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

A. JAY CRISTOL, Chief Judge.

**THIS PROCEEDING** came on for trial December 19, 1994. The Plaintiff is represented by Scott W. Spradley of Orlando, Florida, and by David C. Tassell of Jupiter, Florida. The Defendant is represented by Mark Evans Kass of Miami, Florida. Having received evidence and the testimony of the Defendant, the Court makes its findings of fact and conclusions of law as follows.

*Findings of Fact*

1. This is an action to determine the dischargeability of a debt pursuant to Section 523(a)(2)(A) of the Bankruptcy Code with respect to the Defendant's use of a VISA credit card issued by the Plaintiff in the name of the Defendant, ORIOL CRUZ, Account No. 4250–430–378–767.

2. It is undisputed that the Account was opened in January 1990 with a credit limit of $8,000.00.

3. As of March 5, 1994, the Account had a zero balance.

4. However, on or about March 7, 1994, the Defendant used the Account to obtain an $8,000.00 cash advance which he received in $100.00 bills from Ocean Bank of Miami.

5. The Defendant used the $8,000.00 cash advance to pay his attorney $750.00 in attorney's fees and $160.00 for the filing fee for the commencement of this Chapter 7 case; sent $1,500.00 of the cash advance to certain of his relatives in Cuba; used a portion of the $8,000.00 to pay his landlord for eight (8) months worth of rent which was past due; and used the balance of the $8,000.00 cash advance for wagering at the local Greyhound Dog Track.

6. The Defendant last had meaningful income from employment (or from any source) in 1980, at which time he was terminated from his job at Winn–Dixie.

7. The only income the Defendant earned from any source between 1980 and the June 24, 1994 date of commencement of this case came from part-time work driving a cab in Miami Beach, Florida.

8. The Defendant averaged $100.00 per week in earnings from driving the cab during the year preceding the date of commencement of his Chapter 7 case, although according to his Statement of Financial Affairs, the

Defendant received no income from any source during the two (2) years preceding the commencement of this case.

9. The Defendant had no income other than from the part-time job driving the cab during 1994.

10. The Defendant's total monthly expenses—as summarized on Schedule J herein—were $1,442.00 for the month of June 1994, which was the date of commencement of this case.

11. The Defendant's total monthly expenses for each month during the twelve (12) months which preceded the date of commencement of this case were approximately $1,442.00.

12. At the time of commencement of this case, the outstanding balance on his twelve (12) credit cards totalled $51,866.37.

13. Virtually all of the balance on the Defendant's credit cards is a result of his wagering at the Dog Track, and $43,466.37 of the credit card debt had already been incurred at the time he obtained the $8,000.00 cash advance from the Plaintiff.

14. On those occasions when the Defendant did make a payment to one of his credit card issuers, he made the payment with one of his other credit cards, which served to transfer debt from one of the Defendant's creditors to another, rather than reduce the total amount of the Defendant's unsecured debt.

15. The Defendant did not have the intent to repay the Plaintiff at the time he obtained the $8,000.00 cash advance from the Plaintiff.

16. The Defendant did not have the ability to repay the Plaintiff at the time he obtained the $8,000.00 cash advance from the Plaintiff.

### Conclusions of Law

■ 1. In order to obtain an exception to discharge, FIRST CARD must prove by a preponderance of the evidence that the Defendant used the FIRST CARD credit card account to obtain money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by false pre-

tenses, a false representation, or actual fraud. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ 2. The Defendant's use of the FIRST CARD Account constituted an implied representation that he had the means and the ability to repay for his use of the Account. *In re Dorsey*, 120 B.R. 592 (Bkrtcy.M.D.Fla.1990); *In re Borah*, 36 B.R. 535 (Bkrtcy.M.D.Fla.1983); *In re Wilson*, 32 B.R. 772 (Bkrtcy.D.Tenn.1983).

■ 3. Intent to defraud may be determined through application of the nonexclusive factors utilized *In re Faulk*, 69 B.R. 743 (Bkrtcy.N.D.Ind.1986). These factors include:

A. Whether an attorney has been consulted concerning the filing of bankruptcy before the charges were made;

B. The number of charges incurred during the relevant time period;

C. The amount of the charges;

D. The financial condition of the Debtor at the time the charges are made;

E. Whether or not the Debtor was employed;

F. The Debtor's prospects for employment;

G. Financial sophistication of the Debtor;

H. Whether there was a sudden change in the Debtor's buying habits; and

I. Whether the purchases were made for luxuries or necessities. *Id.* at 757 (citing *Carpenter*, 53 B.R. at 730).

■ 4. The purchase of goods with a credit card constitutes an implied representation by the purchaser that he has both the means and the intent to repay for the goods purchased. *In re Schmidt*, 36 B.R. 459 (E.D.Mo.1983); *In re Kramer*, 38 B.R. 80 (Bkrtcy.W.D.La.1984); *In re Ciavarelli*, 16 B.R. 369 (Bkrtcy.E.D.Pa.1982).

■ 5. Thus, if the cardholder uses the card to purchase goods or to obtain cash advances while knowing that the charges cannot be paid, or if evidence indicates that the cardholder should have known that the

charges cannot be paid, the creditor has established a claim of nondischargeability. *In re Carpenter*, 53 B.R. 724 (Bkrtcy.N.D.Ga. 1985); *In re McKinney*, 18 B.R. 607 (Bkrtcy. M.D.Ga.1982); *In re Black*, 373 F.Supp. 105 (E.D.Wis.1974).

6. It is undisputed that the Defendant was unemployed and earned zero income from any source between January 1994 and June 1994 at the time of commencement of his Chapter 7 case.

7. Clearly, the Defendant knew or should have known that he could not possibly meet the obligations he incurred on the FIRST CARD credit card by obtaining an $8,000.00 cash advance while being unemployed.

8. Furthermore, at the time he filed his petition, the Defendant had virtually no property, and there is nothing in the record to indicate that his financial status one (1) year earlier was much different.

9. In addition, the Defendant had no prospects to obtain meaningful employment at the time he obtained the $8,000.00 from the Plaintiff.

10. Under the facts of this proceeding, Plaintiff, FIRST CARD, has met its burden of proof, and the record justifies a conclusion that the debt owed by the Defendant to Plaintiff, FIRST CARD, should be excepted from the provisions of the discharge in bankruptcy by virtue of Section 523(a)(2)(A) of the Bankruptcy Code.

11. Pursuant to the terms of the Cardmember Agreement received into evidence, Plaintiff is entitled to an award of attorney's fees for the fees incurred in this proceeding. *TranSouth Financial Corp. of Florida v. Johnson*, 931 F.2d 1505 (11th Cir. 1991). But this Court will not award attorney fees. What this Court will award is the greedy lender award for January 1990. What kind of underwriting procedures were used by First Card Services, Inc. in approving an $8,000 cash advance to a customer with over $40,000 in credit card debt and no income for over a year? Where did the Debtor, a 57–year old Cuban refugee with a third grade education get this magic card in the first place? He testified that he never applied for the card. "They sent it to [him] in the mail." Is this a great country or what?

The Court must indeed applaud the compassion and generosity of Oriol Cruz. Sending $1500.00 of the cash advance to his father in Cuba was certainly a kind and generous thing to do. It was equally kind of First Card Services, Inc. to make this money available to him. While the Court can not condone the conduct of Debtor, the Court suspects that the chance of the creditor recovering on this debt is less than certain.

12. A separate final judgment shall be entered in accordance with the foregoing.

### FINAL JUDGMENT

This adversary proceeding came on for trial, the undersigned United States Bankruptcy Judge presiding, on Plaintiff, FIRST CARD SERVICES, INC.'s Complaint Seeking Exception to Discharge. The issues having been duly considered and a decision having been duly rendered,

### IT IS ORDERED AND ADJUDGED:

1. The debt owed by Defendant, ORIOL CRUZ, to Plaintiff, FIRST CARD SERVICES, INC., on VISA credit card Account No. 4250–430–378–767, is non-dischargeable and shall survive and be excepted from any discharge granted to Defendant, ORIOL CRUZ, in his Chapter 7 bankruptcy case, No. 94–12531–BKC–AJC.

2. Plaintiff, FIRST CARD SERVICES, INC., shall recover from the Defendant, ORIOL CRUZ, the sum of $8,766.81, with interest thereon at the rate of 12% as provided by law, and its costs of action.

### DONE and ORDERED.