216 B.R. 981 (1997)
In re Sheila M. MACK, Debtor.
FIRST DEPOSIT NATIONAL BANK, Plaintiff,
v.
Sheila M. MACK, Defendant.
Bankruptcy No. 97-07651, Adversary No. 97-90017.
United States Bankruptcy Court, N.D. Florida, Tallahassee Division.
November 5, 1997.
*982 Scott Spradley, Orlando, FL, for Plaintiff.
Thomas B. Woodward, Tallahassee, FL, for Defendant.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
LEWIS M. KILLIAN, Jr., Bankruptcy Judge.
"Is this a great country or what?", In re Cruz, 179 B.R. 975, 978 (Bankr.S.D.Fla.1995). The defendant in this adversary proceeding, brought pursuant to 11 U.S.C. § 523(a)(2)(A) to determine the dischargeability of credit card debt, epitomizes the conservative family values ideal of the stay at home mom who raises the children, buys groceries, and cooks, while her husband works to support the family. Sheila Mack is a housewife who was last employed in 1986. She has no income of her own except for a little babysitting money, perhaps as much $20.00 per month, and occasional money from her husband, as much as $100.00 per month. Her husband, prior to the filing of their joint petition under Chapter 7 of the Bankruptcy Code, was employed as a sales supervisor for a beverage distributorship earning approximately $32,000.00 per year. During the course of their ten (10) year marriage, Mr. Mack earned all of the family income and handled all of the family's finances. While the defendant had her own bank account, all of the family's bills were paid through Mr. Mack's bank account, for which he was the sole account holder and the sole signatory authority. The defendant never saw any of the bills that came into the house and she and her husband did not discuss finances.
Notwithstanding the defendant's total reliance on her husband, she had credit cards in her own name. The scheduled creditors in this case reflect that in addition to the claim *983 of plaintiff in this proceeding, the defendant had three (3) other credit cards in her own name, with balances totaling roughly $12,600.00. Exactly when these other credit cards were obtained by the defendant and when the charges were incurred on them was not introduced at trial, but the defendant did testify that most of the charges were made prior to her receipt of the card giving rise to this proceeding. In late 1995, plaintiff sent to defendant, completely unsolicited, a one page form entitled "30- Second Response Certificate" inviting her to accept its invitation for a customized VISA Gold account. The invitation had an expiration date of December 26, 1995. The only information requested was her social security number, home phone number, and annual household income. In early 1996, the defendant received her new credit card and a pre-printed cash advance check, characterized on her account statement as a "promotional cash advance" in the amount of $3,000.00. The cash advance check had a printed date of March 28, 1996 and the defendant, upon receipt, endorsed it and deposited it into her checking account. The advance was posted on her VISA account on April 19, 1996. On May 13, 1996, defendant wrote another cash advance check, one of which is apparently provided with each monthly statement by plaintiff, for the sum of $1,000.00, payable to her husband. After that, no other charges are reflected until late June when defendant began utilizing the credit card for purchases at the end of June and through the month of July for family related items such as groceries, clothing, gasoline, and dentist bills. The last charge by the defendant occurred on July 25, 1996. The total purchases as reflected on the billing statement ending July 26, 1996 were $971.53. A payment of $80.00 was made against the account on June 27th and a payment of $82.00 was made on July 31st. At the time of the commencement of this bankruptcy case, on November 26, 1996, the balance due on the account was $5,472.93. The credit limit was $5,000.00. The credit card had not been revoked when the charges were made.
The defendant testified that when she took the two cash advances and utilized the credit card, she believed that her husband was paying the bills. She was unaware of any family financial difficulties since her husband had not discussed the family finances with her. Finally, during the summer of 1996, he advised her that they were in financial difficulty. The purpose of the $1,000.00 cash advance, which she had made to her husband in May, was to assist him in paying bills. However, even at that time it does not appear that he fully confided in her regarding the depth of the family's financial problems. When he did advise her of their difficulties, she ceased making charges on the account. In October of 1996, the defendant and her husband made an appointment with and went to see the Consumer Credit Counseling Service of Central Florida, Inc. That appointment was October 29, 1996. As a result of that appointment, they concluded that their credit situation was hopeless and then sought the assistance of a bankruptcy attorney leading to the filing of this case.
The schedules reflect that, between the two of them, the defendant and her husband had 12 credit cards with total indebtedness of $52,733.29. Plaintiff seeks to have its claim excepted from discharge alleging that defendant incurred the debt at a time when she was unable to pay, that she either knew or should have known of the inability to pay, and that she acted with intent to deceive the plaintiff. Trial was conducted on October 28, 1997. The only evidence presented by plaintiff, other than the testimony of defendant in court and through responses to plaintiff's request for admissions and plaintiff's interrogatories were the credit card statements, the two cash advance checks, and the defendant's bankruptcy petitions and schedules.
The issue of the dischargeability of credit card debt has spawned perhaps more judicial opinions than any other issue in the field of bankruptcy law over the past few years. This court's most recent analysis of the issue is contained in In re Cox, 150 B.R. 807 (Bankr.N.D.Fla.1992). In Cox, I determined that the standard for excepting a credit card debt from discharge pursuant to § 523(a)(2)(A) is "actual fraud," focusing solely upon the debtor's intent at that time the charges were incurred. Id. at 811. In evaluating the debtor's intent, I applied what *984 has widely become accepted as a non-exclusive list of twelve factors which a court may consider in determining the debtor's intent at the time the charges were made. These factors are:
1) The length of time between the charges and the filing of the bankruptcy;
2) Whether an attorney has been consulted concerning the filing of bankruptcy before the charges are made;
3) The number of charges;
4) The amount of the charges;
5) The financial condition of the debtor when the charges were made;
6) Whether the charges exceeded the credit limit of the account;
7) Whether there were multiple charges on the same day;
8) Whether the debtor was employed;
9) The debtor's prospects for employment;
10) The financial sophistication of the debtor;
11) Whether the debtor's spending habits suddenly changed; and
12) Whether the charges were incurred for luxuries or necessities.
Id. While analysis of the twelve factors is a tool for trying to determine the debtor's intent, the factors cannot be applied in a mechanical fashion. Furthermore, the test for determining fraudulent intent is not an objective standard of whether or not a reasonable person should have known of his inability to pay, but rather a subjective standard of actual intent. In re Koop, 212 B.R. 106 (Bankr.E.D.N.C.1997). While the debtor's ability or inability may be a factor to consider in determining the existence of fraudulent intent, such ability should not be the primary focus of the inquiry since ability to repay a debt relates to the debtor's financial condition. Under § 523(a)(2), only a written representation of the debtor's financial condition can be the basis for an allegation of fraud.
Finally, under the common law fraud theory applicable here, the Supreme Court in Field v. Mans, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), has made it clear that a creditor must demonstrate justifiable reliance on any alleged misrepresentation by the debtor.
In evaluating the evidence presented at trial against the twelve factors, I am unable to conclude that plaintiff has proven by a preponderance of the evidence that the defendant lacked the intent to pay the charges on her account at the time they were made. The two convenience checks in the total amount of $4,000.00 were drawn on more than six months before defendant and her husband consulted a bankruptcy attorney and filed the bankruptcy petition. The last charge made on the account was four (4) months prior to the filing and a payment was made subsequent to the last charge on the account. The charges were not incurred for luxury items, the debtor's spending habits did not change leading up to the bankruptcy, and the defendant is anything but financially sophisticated. While the credit limit on the account was exceeded, the total charges made by the defendant did not exceed the limit. The limit was exceeded only when the various late charges and interest were added to the account balance. While the defendant and her husband were in dire financial circumstances at the time the charges were made, the evidence establishes that she was not aware of those circumstances. The facts that a payment was made after the last charge was incurred and that the defendant and her husband sought assistance from Consumer Credit Counseling are further evidence of a lack of intent to defraud. Based on the foregoing analysis, I find that plaintiff has not demonstrated by the preponderance of the evidence that the defendant did not intend to repay the debt when the charges were incurred.
Further, regardless of the debtor's intent, plaintiff failed to present any evidence that it justifiably relied on any representations, implied or otherwise, that defendant had the intent or the ability to make payments. Plaintiff presented absolutely no evidence that it did anything to determine whether or not this defendant had even the slightest ability to repay a $5,000.00 line of credit. The facts of this case clearly establish that at the time the defendant was offered *985 the credit card she, individually, had absolutely no ability to pay, and it is inconceivable that any kind of credit check on defendant would have suggested that she could pay. Where, as in this case, it appears that the credit card issuer has not shown any credit investigation prior to issuing the credit card, the court cannot find that it justifiably relied on any representations, fraudulent or otherwise made by the defendant. See, F.C.C. National Bank v. Cacciatore, (In re Cacciatore), 209 B.R. 609 (Bankr.E.D.N.Y. 1997). Even had plaintiff performed a credit check, given defendant's financial condition it would be extremely difficult to find that any reliance was justified.
My finding that the debt in the instant case is dischargeable should not in any way be construed as condoning the financial irresponsibility of the defendant. She apparently felt free to purchase whatever she wanted by utilizing the credit card, without ever wondering whether she and her husband could pay off the account. However, the irresponsibility of the plaintiff in initially making the offer of credit, and then practically throwing money at her in the form of a preprinted $3,000.00 convenience check is appalling. Before the issuer of a credit card can hope to have any claims declared nondischargeable, it must demonstrate that it exercised at least some degree of diligence in determining the credit worthiness of the recipient.
Based on the foregoing findings and conclusions, made in accordance with Fed. R.Bankr.P. 7052, I find that the claim of plaintiff First Deposit National Bank is not excepted from discharge. A separate final judgment will be entered in accordance herewith.