In re Hassan Hamidi HASHEMI, Debtor.

**AMERICAN EXPRESS TRAVEL RE-LATED SERVICES COMPANY INC., Plaintiff–Appellee,**

v.

**Hassan Hamidi HASHEMI, Defendant–Appellant.**

No. 95–55628.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 20, 1996.

Decided Dec. 30, 1996.

As Amended Jan. 24, 1997.

Nathan Boatner, Los Angeles, CA, for defendant-appellant.

Gilbert B. Weisman, Becket & Watkins, Malvern, PA; Dennis Winters, Winters Law Firm, Santa Ana, CA, for plaintiff-appellee.

Before: KOZINSKI and LEAVY, Circuit Judges, and SCHWARZER,* District Judge.

KOZINSKI, Circuit Judge.

Appellant didn't leave home without his American Express cards. In fact, he and his family traveled to Europe in style, and charged it all. On his return, appellant owed American Express more than $60,000, the bulk of which represented charges made during the six-week trip. He promptly filed for bankruptcy, and American Express petitioned to have his debt declared nondischargeable under 11 U.S.C. § 523(a)(2)(A), which precludes discharge of debts obtained through "actual fraud." The bankruptcy court denied appellant's request for a jury trial, ruled the debt nondischargeable and

ordered appellant to pay American Express $69,793.67 plus interest. The district court affirmed the bankruptcy court's judgment and Dr. Hashemi appeals again. We must decide whether appellant was entitled to a jury trial in the dischargeability proceeding, whether American Express adduced sufficient proof of "actual fraud" and whether American Express, as a prevailing party, is entitled to attorney's fees.

I

Appellant first argues that the Seventh Amendment guarantees him the right to have a jury decide whether his debt is dischargeable. We determine whether the Seventh Amendment applies to a given proceeding by reference to the two-part test of *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989): "First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." *Id.* at 42, 109 S.Ct. at 2790 (quoting *Tull v. United States*, 481 U.S. 412, 417–18, 107 S.Ct. 1831, 1835–36, 95 L.Ed.2d 365 (1987)). Actions to determine the nondischargeability of debts fail the second prong of this test because such proceedings are equitable in nature. *See N.I.S. Corp. v. Hallahan (In re Hallahan)*, 936 F.2d 1496, 1505–06 (7th Cir.1991); *Schieber v. Hooper (In re Hooper)*, 112 B.R. 1009, 1011–13 (9th Cir. BAP 1990). Bankruptcy litigants therefore have no Seventh Amendment right to a jury trial in dischargeability proceedings.

In the course of making the dischargeability determination, however, the bankruptcy court also found that appellant had breached his credit agreement with American Express; it ordered him to repay the nondischarged debt with interest. This determination was legal, not equitable, *see Atlas Roofing Co. v. Occupational Safety Comm'n*, 430 U.S. 442, 459, 97 S.Ct. 1261,

* Honorable William W Schwarzer, Senior United States District Judge for the Northern District of    California, sitting by designation.

1271, 51 L.Ed.2d 464 (1977), and therefore fell within the ambit of the Seventh Amendment. Nevertheless, we have held that a bankruptcy litigant waives his right to a jury trial in proceedings "vital to the bankruptcy process of allowance and disallowance of ... claims." *Benedor Corp. v. Conejo Enterprises, Inc. (In re Conejo Enterprises, Inc.)*, 96 F.3d 346, 354 n. 6 (9th Cir.1996). We need not decide here whether an action to recover a nondischargeable debt falls into this category.[1] Appellant conceded that he breached his contract with American Express and that he made or authorized all of the charges in question. Because there were no contested issues of fact, the bankruptcy court properly granted summary judgment to American Express on its breach of contract claim. No trial, by judge or by jury, was required.

## II

■■■■■ Having failed in his effort to obtain a new trier of fact, appellant claims the bankruptcy court erred in finding that he defrauded American Express. Section 523(a)(2)(A) precludes discharge of any debt obtained by "false pretenses, a false representation, or actual fraud." In order to establish a debt's nondischargeability under this section, the creditor must show:

(1) the debtor made ... representations;

(2) that at the time he knew they were false;

(3) that he made them with the intention and purpose of deceiving the creditor;

(4) that the creditor relied on such representations; [and]

(5) that the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made.

*Britton v. Price (In re Britton)*, 950 F.2d 602, 604 (9th Cir.1991). These requirements mirror the elements of common law fraud, *see Citibank v. Eashai (In re Eashai)*, 87 F.3d 1082, 1087 (9th Cir.1996), and the creditor is required to prove each by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991). Appellant contends that American Express failed to establish his intent to defraud, that he made no false representations to American Express, and that if any such representations were made, American Express did not justifiably rely on them.

■■■■■ a. *Fraudulent Intent.* "[A] court may infer the existence of the debtor's intent not to pay if the facts and circumstances of a particular case present a picture of deceptive conduct by the debtor." *In re Eashai*, 87 F.3d at 1087. In *Citibank South Dakota v. Dougherty (In re Dougherty)*, 84 B.R. 653 (9th Cir. BAP 1988), our Bankruptcy Appellate Panel enumerated twelve factors relevant to determining a debtor's intent.[2] These factors are nonexclusive; none is dispositive, nor must a debtor's conduct satisfy a minimum number in order to prove fraudulent intent. So long as, on balance, the evidence supports a finding of fraudulent intent, the creditor has satisfied this element. *See Grogan*, 498 U.S. at 291, 111 S.Ct. at 661. We adopted *Dougherty*'s twelve-factor test

---

**1.** The debtor-creditor relationship is clearly restructured by a dischargeability proceeding, which determines the post-petition collectability of a debt even where the debtor denies owing it. It is not clear, however, how the *Benedor* test would apply to a creditor's breach of contract claim, which only seeks to define, rather than restructure, the parameters of the parties' prepetition relationship. On the one hand, the outcome of this action will affect other creditors of the bankruptcy estate by drawing money from the pool of assets available to satisfy the debtor's obligations. Determinations of liability may therefore affect the restructuring of the debtor's relationship with other creditors. On the other hand, it is not clear that this effect is significant enough to make such proceedings "vital" under *Benedor*.

**2.** The factors are: (1) the length of time between the charges and the bankruptcy filing; (2) whether or not an attorney had been consulted concerning the filing of bankruptcy before the charges were made; (3) the number of charges made; (4) the amount of the charges; (5) the financial condition of the debtor at the time the charges were made; (6) whether the charges were above the credit limit of the account; (7) whether the debtor made multiple charges on the same day; (8) whether or not the debtor was employed; (9) the debtor's prospects for employment; (10) the financial sophistication of the debtor; (11) whether there was a sudden change in the debtor's buying habits; and (12) whether the purchases made were luxuries or necessities. *See In re Dougherty*, 84 B.R. at 657.

as the law of the circuit in *In re Eashai*, 87 F.3d at 1087–88.

■ Applying the test set out in *Dougherty* and *Eashai*, as did the bankruptcy court, there is ample evidence to support the finding that appellant intended to defraud American Express. Appellant made nearly 170 charges totaling more than $60,000 during a six-week trip with his family to France. These charges exceeded appellant's annual income and, even before the trip, appellant already owed more than $300,000 in unsecured credit card debt. Appellant did have one major asset when he made the charges— a one-half ownership interest in an eight-unit condominium project. He claims the purpose of his trip was to borrow money from his mother-in-law to support this real estate venture. This does not explain why appellant stayed in France for six weeks, took his wife and two children with him, took a side-trip to the French Riviera, purchased cosmetics, expensive meals and other luxury items, and ultimately charged almost as much on his credit cards as he claims he planned to borrow. Moreover, while appellant was away, the holder of the second mortgage on his condominium project initiated foreclosure proceedings.[3] This should have alerted appellant that he would not be able to repay his debt by selling his interest in the property. Given these facts, the bankruptcy court could reasonably infer that appellant tried to have a last hurrah at American Express's expense.

■ b. *False Representations.* Appellant also complains that he never made any fraudulent misrepresentations to American Express because American Express extended him an unlimited line of credit. We rejected the identical argument in *Anastas v. American Savings Bank (In re Anastas)*, 94 F.3d 1280 (9th Cir.1996). Each time a "card holder uses his credit card, he makes a representation that he intends to repay the debt.... When the card holder uses the card without an intent to repay, he has made a fraudulent representation to the card issuer." *Id.* at 1285. Because the bankruptcy court found that appellant had no intention of repaying his debt, each time he used his cards he made a fraudulent representation to American Express.

■ c. *Justifiable Reliance.* "[T]he credit card issuer justifiably relies on a representation of intent to repay as long as the account is not in default and any initial investigations into a credit report do not raise red flags that would make reliance unjustifiable." *Id.* at 1286. At the time appellant began his spending spree, his account was not in default. In fact, he owed American Express only $227. Moreover, appellant himself testified that he had repaid American Express balances of up to $60,000 "numerous times" before. American Express therefore had no reason to question the good faith of appellant's promise to repay. Because American Express provided ample evidence of each element of common law fraud, the bankruptcy court was fully justified in declaring appellant's debt nondischargeable.

## III

■ Having successfully avoided discharge of appellant's debt, American Express seeks an award of attorney's fees. Its request is based on a clause in appellant's cardmember agreement that allows American Express to recover attorney's fees incurred in enforcing its rights under the contract. However, "the question of the applicability of the bankruptcy laws to particular contracts is not a question of the enforceability of a contract but rather involves a unique, separate area of federal law." *Collingwood Grain, Inc. v. Coast Trading Co. (In re Coast Trading Co.)*, 744 F.2d 686, 693 (9th Cir.1984). Because the bankruptcy court did not need to "determine the enforceability of the ... agreement to determine dischargeability," *Ford v. Baroff (In re Baroff)*, 105 F.3d 439, 442 (9th Cir.1997), American Express' dischargeability claim is not an action on the contract. American Express is therefore not entitled to fees in-

---

**3.** Appellant's mother-in-law appears not to have been moved by his plight, as he was unable to forestall the foreclosure.

curred pursuing this part of its claim. *See Grove v. Fulwiler (In re Fulwiler)*, 624 F.2d 908, 910 (9th Cir.1980).

■ In addition to declaring appellant's debt nondischargeable, the bankruptcy court also found he had breached his credit agreement with American Express. The costs of litigating this issue—however small they might be because the breach was not disputed—do fall within the letter of the cardmember agreement's fee provision. American Express is thus entitled by state law to recover any fees incurred litigating this question. *See Krommenhoek v. A–Mark Precious Metals, Inc. (In re Bybee)*, 945 F.2d 309, 315–16 (9th Cir.1991) (prevailing party can recover fees for some claims litigated in bankruptcy court even if fees are unavailable for others); *Merced Production Credit Assn. v. Sparkman (In re Sparkman)*, 703 F.2d 1097, 1099 (9th Cir.1983) (attorney's fees may be recovered where "bankruptcy court adjudicates a contract claim in connection with a petition in bankruptcy"). Whether American Express incurred any segregable fees prosecuting its breach of contract claim, and the amount of any such fees, we leave for determination on remand.

**AFFIRMED AND REMANDED.**