**In re Robin C. KOOP, Debtor.**

**FIRST CARD SERVICES, INC., Plaintiff,**

v.

**Robin C. KOOP, Defendant.**

**Bankruptcy No. 96–00956–5–ATS.**
**Adversary No. S–96–00078–5–AP.**

United States Bankruptcy Court,
E.D. North Carolina,
Raleigh Division.

Aug. 26, 1997.

applied to the total balance of said claim, or $441,690.00.

Brian S. Herrle, Cary, NC, for Debtor/Defendant.

Robert A. Lefkowitz, Hendrick Law Firm, Winston–Salem, NC, for Plaintiff.

## MEMORANDUM OPINION

A. THOMAS SMALL, Chief Judge.

The trial of this adversary proceeding to determine the dischargeability pursuant to 11 U.S.C. § 523(a)(2)(A), of a credit card debt owed by the chapter 7 debtor, Robin C. Koop, to the plaintiff, First Card Services, Inc., was held in Raleigh, North Carolina on July 9, 1997.

### JURISDICTION

This court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151 and 157, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(I) which this court may hear and determine.

### FACTS

Ms. Koop filed her petition for relief under chapter 7 of the Bankruptcy Code on June 7, 1996. Prior to, bankruptcy, in mid-March 1996, the debtor obtained two cash advances totaling $8,273.74 on her Visa Gold credit card that First Card contends are nondischargeable, pursuant to 11 U.S.C. § 523(a)(2)(A). First Card maintains that at the time of the advances, the debtor had neither the ability nor the intent to repay the indebtedness.

Ms. Koop is 41 years old, is separated from her husband and has primary custody of a 14–year old daughter. In February 1993, while she was unemployed and still living with her husband in California, Ms. Koop received and accepted an unsolicited invitation from First Card to receive a preapproved Visa Gold Card with a $7,500 credit limit. To accept the card Ms. Koop completed the invitation certificate on which she listed her employment as "Home Maker."

Ms. Koop used the card to make purchases and, in November 1995, exceeded her credit limit when her balance reached approximately $8,750. During that month Ms. Koop wrote a cash advance check against the account that First Card returned because the credit limit had been exceeded. Also, during November Ms. Koop gave First Card an insufficient funds check to pay off the account balance. Ms. Koop did pay off the account in January, 1996, and shortly thereafter First Card sent Ms. Koop a series of "convenience" checks. The checks carried a special reduced interest rate, and according to a promotional letter that accompanied the checks, could be used to pay off other higher-interest accounts.

The Visa Gold Card was not Ms. Koop's only credit obligation, and on March 14, 1996, in an attempt to gain control of her deteriorating financial circumstances, she wrote convenience checks totaling $8,273.74 to pay accounts with higher interest rates at Citibank and Capital One. Although she was current in her payments on all of her credit card accounts and had significant credit available

on several accounts, Ms. Koop was in serious financial trouble.

Prior to the separation Ms. Koop depended on her husband to manage her financial affairs and relied on his income to pay her bills. After the separation, Ms. Koop who was inexperienced in managing personal finances was left with substantial credit card debts and a meager income as a retail store manager.

In April 1996, Ms. Koop sought the advice of Consumer Credit Services of America and was told to contact a bankruptcy attorney. In her bankruptcy petition and schedules, the debtor listed nine revolving credit accounts totaling more than $42,000, a net monthly income of $1,891, monthly expenses of $1,695 and disposable income of $196.

At the time of her bankruptcy and at the time she incurred the advances of $8,273.74, Ms. Koop did not have the ability to repay her credit card accounts. Nevertheless, the court finds that Ms. Koop did not obtain the extension of credit by false pretenses, a false representation or actual fraud. At the time that Ms. Koop wrote the convenience checks, she could not repay all of her consumer debt, yet the court has no doubt that her intention at the time of the advances was to pay First Card and her other creditors in full.

## DISCUSSION AND CONCLUSIONS

■ First Card contends that the cash advances obtained by the debtor are nondischargeable under § 523(a)(2)(A), because at the time of the advances Ms. Koop made an implied representation that she had the ability to repay the debt, that she in fact was unable to pay the debt and that she should have known of that inability. First Card relies on this court's opinion in *In re Herring*, 191 B.R. 317 (Bankr.E.D.N.C.1995), holding that

> when a credit card customer makes a credit purchase or takes out a cash advance[,] the customer makes an implied representation that the customer is able to repay the obligation. The court also agrees that if, at the time of the purchase, the customer did not have the ability to repay, and *knew or should have known* that there was no

ability to repay, the debt would be nondischargeable under § 523(a)(2)(A)

*Id.* at 319–320.

However, more recent decisions from other courts construing the application of § 523(a)(2)(A) to credit card advances in light of the Supreme Court's decision in *Field v. Mans*, —— U.S. ——, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), have convinced this court that the holding in *Herring* is incorrect. The Supreme Court held that the terms in § 523(a)(2)(A), "false pretenses, a false representation, or actual fraud," are common law terms of art that "imply elements that the common law had defined them to include." *Field*, —— U.S. at ——, 116 S.Ct. at 443.

■ If the court is to apply the common law definition of fraud for purposes of § 523(a)(2)(A), the emphasis is not on the debtor's *ability* to repay, but on the debtor's *intention* to repay.

> *Field* thus neatly solves the struggle over conceptualizing credit card fraud. Quite simply, it directs the focus to the common law of fraud. At common law, a promise of future performance or intention is actionable as fraud if at the time the statement was made, the debtor never actually intended to honor the statement.

*In re Briese*, 196 B.R. 440, 449 (Bankr. W.D.Wis.1996) (citations omitted).

The Court of Appeals for the Ninth Circuit recently came to the same conclusion in *In re Anastas*, 94 F.3d 1280 (9th Cir.1996). The court held that

> [T]he representation made by the card holder in a credit card transaction is not that he has an *ability* to repay the debt; it is that he has an intention to repay. Indeed, section 523(a)(2) expressly prohibits using a non-written representation of a debtor's financial condition as a basis for fraud....
>
> [I]f ability to repay were the focus of the fraud inquiry, too often would there be an unfounded judgment of non-dischargeability of credit card debt. Rather, the express focus must be solely on whether the debtor maliciously and in bad faith incurred credit

card debt with the intention of petitioning for bankruptcy and avoiding the debt.... While we recognize that a view to the debtor's overall financial condition is a necessary part of inferring whether or not the debtor incurred the debt maliciously and in bad faith, and that the twelve factors we set out in *Eashai*[1] are useful for arriving at a finding of bad faith, the hopeless state of a debtor's financial condition should never become a substitute for an actual finding of bad faith.

*Id.* at 1285–1286.

■ The test therefore is not the objective standard of whether a reasonable person should have known there was an inability to repay, but the subjective standard of the debtor's intention to repay. As the Bankruptcy Appellate Panel for the Ninth Circuit observed in *In re Karelin*, 109 B.R. 943 (9th Cir.BAP 1990),

A substantial number of bankruptcy debtors incur debts with hopes of repaying them that could be considered unrealistic in hindsight. This by itself does not constitute fraudulent conduct warranting nondischarge.

*Id.* at 948.

The facts in the present case are clearly distinguishable from those in the Ninth Circuit case *In re Hashemi*, 104 F.3d 1122 (9th Cir.1996) *cert. denied,* —— U.S. ——, 117 S.Ct. 1824, 137 L.Ed.2d 1031 (mem.) (1997), in which the court determined that the debtor's credit card debt to American Express was nondischargeable under 11 U.S.C. § 523(a)(2)(A) because the debt was incurred through "actual fraud." 104 F.3d at 1124. The debtor in *Hashemi* charged over $60,000 on his American Express card during a six week trip with his family through France and immediately filed for bankruptcy upon his return. The court found that prior to the trip, the debtor owed over $300,000 on various unsecured credit cards and the $60,000 that he charged while in France exceeded his yearly income. *Id.* at 1126. "Applying the test set out in *[In re] Dougherty[,* 84 B.R. 653 (9th Cir. BAP 1988)*]* and *Eashai,"* the court found that "there was ample evidence to support the finding that [the debtor] intended to defraud American Express." *Id.*

Unlike the debtor in *Hashemi,* Ms. Koop did not seek or obtain personal benefits through extravagant expenditures charged to First Card. Rather, Ms. Koop sought to consolidate her substantial debt so that she might better reduce it.

Ms. Koop may have been unreasonable in her belief that she could have repaid the cash advances, but she had no fraudulent motive in obtaining the credit from First Card. In fact the advances that were taken to reduce the debtor's interest rates were consistent with Ms. Koop's efforts to satisfy her debts.

Accordingly, the court concludes that Ms. Koop's debts to First Card are dischargeable, and an appropriate judgment will be entered.

---

**1.** The twelve factors stated by the Ninth Circuit in the case of *In re Eashai,* 87 F.3d 1082 (9th Cir.1996) are
1. The length of time between the charges made and the filing of bankruptcy;
2. Whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;
3. The number of charges made;
4. The amount of the charges;
5. The financial condition of the debtor at the time the charges are made;
6. Whether the charges were above the credit limit of the account;
7. Whether the debtor made multiple charges on the same day;
8. Whether or not the debtor was employed;
9. The debtor's prospects for employment;
10. Financial sophistication of the debtor;
11. Whether there was a sudden change in the debtor's buying habits; and
12. Whether the purchases were made for luxuries or necessities.

87 F.3d at 1087–88.